IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                    Plaintiff,

vs.                                                  Civil Action No. _____
                                                     Trial by Jury is Demanded


LIMEÑOS CORPORATION, d/b/a
CEVICHE HOUSE

                    Defendant.
_____/

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful sex-based and retaliatory employment practices and to provide appropriate relief to Charging Party Alexandra Martínez Otero. As alleged with greater particularity in the paragraphs below, Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant Limeños Corporation d/b/a Ceviche House subjected Ms. Martínez to a sexually hostile work environment based on her sex. Further, the EEOC alleges that Defendant retaliated against Ms. Martínez for engaging in protected activity and constructively discharged her.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e-

5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Puerto Rico.

## PARTIES

3.      The Commission is an Agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Limeños Corporation d/b/a Ceviche House ("Ceviche House" or "Defendant"), has continuously done business in Puerto Rico with its principal place of business in San Juan.

5.      At all relevant times, the Defendant has continuously had at least fifteen employees.

6.      At all relevant times, the Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

7.      More than thirty days prior to the institution of this lawsuit, Ms. Martínez filed a charge of discrimination with the Commission alleging violations of Title VII against the Defendant.

8.      The Commission sent the Defendant notice of Ms. Martínez's charge.

9.      The Commission issued a Letter of Determination on January 15, 2020, finding reasonable cause to believe that Defendant discriminated against Ms. Martínez and that

Defendant retaliated against Ms. Martínez leading to her constructive discharge.

10.     Prior to initiating this lawsuit, the Commission attempted to correct the unlawful

employment practices alleged here through informal methods of conciliation, conference,

and persuasion, to remedy the discriminatory practices and provide appropriate relief.

11.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

12.     Ceviche House is located on Avenida Isla Verde Ed. 79, Local A-1, Carolina,

Puerto Rico, 00979.

13.     Ceviche House has three owners, Marcelo López Mandujano, Daniel Sorogastua

Ruffner, and Jorge Rocha Méndez.

14.      Daniel Sorogastua Ruffner is the President of the Defendant.

15.     Jorge Rocha Méndez is the Treasurer of the Defendant.

16.     Marcelo López Mandujano is the Secretary of the Defendant.

17.     Mr. Mandujano is a General Manager for Ceviche House.

18.     Mr. Mandujano was Ms. Martínez's General Manager while she worked at Ceviche

House.

19.     On or about 2013, Ms. Martínez began working at Ceviche House as a server.

20.     Ms. Martínez reported directly to Mr. Mandujano throughout her employment.

21.     Mr. Mandujano began subjecting Ms. Martínez to unwelcome sexually-charged

and/or gender-specific conduct and comments shortly after she was hired, including but not

limited to:

        a.   Mr. Mandujano frequently discussed his sex life at work, including

           comments about how many women he had sex with the previous night;

    b.  Mr. Mandujano often showed Ms. Martínez pictures of naked women;

    c.  Mr. Mandujano regularly commented about female employees' butts;

    d.  Mr. Mandujano often referred to female employees as whores;

    e.  Mr. Mandujano made humiliating comments about body-shapes and figures of female servers, for example, telling servers if they did not lose weight they had to stop working at Ceviche House;

    f.  Mr. Mandujano instructed Ms. Martínez to schedule female servers who were pregnant for less work-days;

    g.  Mr. Mandujano commented about Ms. Martínez's appearance and body;

    h.  Mr. Mandujano commented that he was going to buy donuts for St. Valentine's Day and place the donuts on his penis; and

    i.  Mr. Mandujano engaged in unwelcome touching of a female server when he forcibly kissed her.

22.    Ms. Martínez repeatedly asked Mr. Mandujano to stop his sexually inappropriate conduct and comments.

23.    Ms. Martínez repeatedly asked Mr. Mandujano to stop because his comments and conduct were disgusting and inappropriate.

24.    Ms. Martínez also witnessed Mr. Mandujano sexually harass other female employees at work on a regular basis.

25.    Ms. Martínez witnessed Mr. Mandujano make sexual comments about customers.

26.    Ms. Martínez witnessed Mr. Mandujano, Mr. Ruffner, and Mr. Méndez make sexual comments to each other, including comments about the women they had sex with.

27.    In January and February 2019, Ms. Martínez complained about Mr. Mandujano's

sexually inappropriate conduct at work to Mr. Méndez, Mr. Ruffner, and Rexer Rivas.

28.     After Ms. Martínez's complained to Mr. Méndez, he told her that she should laugh at Mr. Mandujano's perverted jokes.

29.     Ms. Rivas worked as the office administrator for Ceviche House.  Her job responsibilities included, but are not limited to, issuing disciplinary warnings to employees, keeping track of restaurant inventory, suspending employees from work for disciplinary reasons, and interviewing applicants to work at Ceviche House.

30.     Ceviche House did nothing in response to Ms. Martínez's complaints.

31.     Mr. Mandujano's sexually-charged conduct continued.

32.     On February 19, 2019, because she continued to be subjected to sexually inappropriate conduct, Ms. Martínez filed a charge of discrimination with the EEOC ("EEOC Charge") and continued working at Ceviche House as a server.

33.     After she filed the EEOC Charge, the sexual harassment by Mr. Mandujano continued.

34.      As a result of Ms. Martínez's internal complaints and her filing a charge of discrimination, Ceviche House retaliated against Ms. Martínez by subjecting her to a hostile work environment that included, but was not limited to, the following conduct:

> a. Mr. Mandujano expressed that in response to Ms. Martínez's EEOC Charge, he was going to file a $1 million counter-claim for defamation against Ms. Martínez;
>
> b. Mr. Mandujano made threats to physically harm Ms. Martínez and her boyfriend;
>
> c. Mr. Mandujano often referred to Ms. Martínez as a trader;

    d.  Mr. Mandujano said that Ms. Martínez should stop working at Ceviche House, that he could not stand her;

    e.  Mr. Mandujano commented that Ms. Martínez always had a serious look on her face and that it must be because her boyfriend does not fuck her;

    f.  Mr. Mandujano spread lies about Ms. Martínez's personal life and her work performance;

    g.  Mr. Mandujano informed the employees that he would have to close down the restaurant and file for bankruptcy as a result of Ms. Martínez's EEOC Charge;

    h.  Ms. Martínez learned or heard that Mr. Mandujano threatened to fire her;

    i.  Mr. Mandujano instructed the employees to stop speaking to Ms. Martínez;

    j.  Ceviche House employees stopped speaking to Ms. Martínez; and

    k.  On at least one occasion, Mr. Mandujano told his friends who ate at the restaurant that he was tired of Ms. Martínez and that he wanted to fire her.

35.    Because of her complaints, conduct towards Ms. Martínez worsened and became so intolerable that Ms. Martínez was forced to resign on or about May 3, 2019.

36.    During the course of her employment with Ceviche House, Ms. Martínez successfully performed her job as a server.

37.    Ceviche House never disciplined Ms. Martínez for performance issues.

38.    As a result of Mr. Mandujano's unlawful conduct, Ms. Martínez was harmed and suffered damages.

## STATEMENT OF CLAIMS

39.    Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.     Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Ms. Martínez to a sexually hostile work environment.

41.     Defendant engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S. C. § 2000e-3(a), by retaliating against Ms. Martínez for opposing unlawful employment activities, including for complaining about Mr. Mandujano's unwelcome sexual conduct, and for participating in protected activity, including filing an EEOC Charge.

42.     Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) and 704(a) of Title VII, 42 U.S. C. § 2000e-3(a), by constructively discharging Ms. Martínez in retaliation for her having objected to the unlawful conduct and filing an EEOC Charge and because of her sex.

43.     The effect of the practices complained of in paragraphs 12 through 38 above has been to deprive Ms. Martínez of equal employment opportunities and otherwise adversely affect her status as an employee, because of her sex.

44.     The effect of the practices complained of in paragraphs 12 through 38 above has been to deprive Ms. Martínez of equal employment opportunities because of her opposition to unlawful practices and for her filing an EEOC charge.

45.     The unlawful employment practices complained of in paragraphs 12 through 38 above were intentional.

46.     The unlawful employment practices complained of in paragraphs 12 through 38 above were done with malice or with reckless indifference to the federally protected rights of Ms. Martínez.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

47.     Grant a permanent injunction enjoining the Defendant, its owner, members, agents, managers, supervisors and all persons in active concert or participation with it, from engaging in discriminatory conduct based on sex including, but not limited to, permitting a sexually hostile work environment, retaliating against employees who engage in statutorily protected activity in the workplace, and constructively discharging employees based on sex and in retaliation for engaging in protected activity;

48.     Order the Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities without regard to sex;

49.     Order the Defendant to make Ms. Martínez whole by providing appropriate backpay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, reinstatement or front pay in lieu thereof;

50.     Order the Defendant to make whole Ms. Martínez by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 12 through 36 above, in amounts to be determined at trial;

51.     Order the Defendant to make whole Ms. Martínez by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 12 through 38 above, including emotional pain and suffering, in amounts to be determined at trial;

52.     Order the Defendant to pay Ms. Martínez punitive damages for its malicious and reckless conduct, as described in paragraphs 12 through 38 above, in amounts to be

determined at trial;

53.     Grant such other further relief as the Court deems necessary and proper in the

public interest; and

54.     Award the Commission its costs in this action.

## **JURY TRIAL DEMANDED**

The Commission requests a jury trial on all questions of fact raised by this

Complaint.

Dated: March 13, 2020.

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
131 M Street, N.E.
Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney
BEATRIZ ANDRE
Supervisory Trial Attorney

s/Beatriz Biscardi André
New York Bar No. 4394599
Government Attorney No. G01215
beatriz.andre@eeoc.gov
Tel: 786-648-5806
U.S. Equal Employment Opportunity
Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131

CARMEN MANRARA CARTAYA
Trial Attorney
Florida Bar No.  0073887
(application pending for Government
Attorney Number)
U.S. Equal Employment Opportunity
Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 786-648-5811
Carmen.Cartaya@eeoc.gov
*Attorneys for Plaintiff EEOC*